UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                :
VW CREDIT, INC.,                              :
                :        11 Civ. 1950 (PAE)
              Plaintiff,          :
                :        OPINION & ORDER
            -v-                :
                :
BIG APPLE VOLKSWAGEN, LLC, JOHN KOEPPEL,   :
GZREGORZ SAMBORSKI, and JULIAN SALIM,       :
                :
              Defendants.     :
                :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       This opinion and order addresses (1) the motion for partial summary judgment of plaintiff VW Credit, Inc. ("VCI") as to liability on its first cause of action against defendants John Koeppel, Gzregorz Samborski, and Julian Salim (collectively, "defendants"), and (2) the cross-motion for partial summary judgment of defendant Koeppel on his first cross-claim against defendants Samborski and Salim. For the reasons that follow, VCI's partial motion for summary judgment is granted and Koeppel's partial motion for summary judgment is denied.

## I. Background and Undisputed Facts[1]

       Defendant Big Apple Volkswagen, LLC ("Big Apple"), not a party to these motions, is a car dealership in the Bronx, New York. VCI, a Delaware corporation authorized to do business in the state of New York, loaned Big Apple money for its inventory of motor vehicles and provided a working capital line of credit, which Big Apple promised to pay back, as embodied in

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' pleadings and their submissions in support of and in opposition to the instant motion. Except where specifically referenced, no further citation to these sources will be made.

two promissory notes.  On June 12, 2006, Big Apple executed one promissory note, in the amount of $3,347,500, and a master security agreement (collectively, "Wholesale Loan Agreement").  Under the terms of the Wholesale Loan Agreement, Big Apple agreed, *inter alia*, to remit to VCI the portion of each vehicle sale or lease which represented the monetary amount supplied by VCI to Big Apple under the loan.  Big Apple also agreed to repay VCI the sum of $3,347,500, or such lesser sum as might be outstanding under the note, on demand, with interest.  On March 19, 2007, Big Apple executed a second promissory note, in the amount of $250,000, and a master security agreement (collectively, "Capital Loan Agreement").  Under the terms of the Capital Loan Agreement, Big Apple agreed to repay the sum of $250,000, plus interest, at a schedule specified therein.  Under both the Wholesale Loan Agreement and the Capital Loan Agreement (collectively, "Loan Agreements"), Big Apple granted to VCI a security interest in Big Apple's inventory of vehicles, chattels, and proceeds (collectively, "Collateral").  The Wholesale Loan Agreement and the Capital Loan Agreement are cross-defaulted, meaning that a default under one agreement constitutes a default under the other.

On June 12, 2006, defendant Koeppel signed a continuing guaranty, under which he guaranteed all of Big Apple's obligations to VCI.  The guarantee makes Koeppel a primary guarantor under both Loan Agreements.  Defendant Samborski signed a similar document on October 19, 2008, and defendant Salim on October 29, 2008.  As a result of these guarantees (collectively, the "Guaranty Agreements"), Samborski and Salim are also primary guarantors under the Wholesale Loan Agreement and the Capital Loan Agreement.

Big Apple sold 78 vehicles from its inventory, but did not remit payment, as required under the Wholesale Loan Agreement, to VCI, in the amount of $1,237,615.86.  In response to Big Apple's failure to remit payment for these vehicles sold, VCI accelerated payment of all

amounts due under the Wholesale Loan Agreement and the Capital Loan Agreement. By letter dated March 17, 2011, VCI informed guarantor defendants Koeppel, Samborski, and Salim of this acceleration. As of that date, the accelerated amount immediately due and payable to VCI from Big Apple was $3,888,059.84 under the Wholesale Loan Agreement and $54,263.45 under the Capital Loan Agreement.

On March 21, 2011, VCI filed its complaint in this action, alleging claims for breach of contract and breach of guarantees, as well as a claim for replevin of the Collateral. On April 1, 2011, the Court stayed the case for 90 days to monitor defendant Big Apple's bankruptcy proceeding. On July 1, 2011, defendants Samborski and Salim filed an answer; on July 8, 2011, defendant Koeppel filed an answer and cross-claims against Samborski and Salim. On July 11, 2011, Samborski and Salim answered the cross-claims. This case remains stayed against defendant Big Apple, which is the subject of an ongoing bankruptcy proceeding.

On August 2, 2011, VCI filed this motion for summary judgment on liability as to its breach of contract claim only, against defendants Koeppel, Samborski, and Salim. On November 8, 2011, Koeppel filed a timely opposition and cross-motion for summary judgment against his co-defendants Samborski and Salim. Samborski and Salim did not oppose or otherwise respond to either motion for summary judgment.

## II.     Applicable Legal Standards

A party moving for summary judgment has the burden of establishing that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) & (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285-86 (2d Cir. 2002). Because summary judgment is an extreme remedy, cutting off the rights of the non-moving party to

3

present a case to the jury, the moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment can defeat the motion for summary judgment "only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Spinelli v. City of New York*, 579 F.3d 160, 166-67 (2d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23; Fed. R. Civ. P. 56(c)) (internal quotation marks and additional citations omitted). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247 (emphasis in original). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *Id.* at 248.

**III.    Analysis**

    **A.    VCI's Motion for Summary Judgment as to Koeppel, Samborski, and Salim**

For the reasons set out below, there is no genuine dispute of material fact as to defendants' breach of the Loan Agreements, and as to defendants' liability to VCI under those Loan Agreements, by way of the Guaranty Agreements. Summary judgment in favor of VCI as to its breach of contract claims is, therefore, appropriate.

Under New York law, the elements of a breach of contract claim are "'the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting

damages.'"  *Russo v. Estee Lauder Corp.*, No. 08-cv-3965, 2012 WL 694842, at *19 (E.D.N.Y. Mar. 1, 2012) (quoting *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426 (N.Y. App. Div. 2010)).  Under New York law, "'the Court must look first to the parties' written agreement to determine the parties' intent and limit its inquiry to the words of the agreement itself if the agreement sets forth the parties' intent clearly and unambiguously.'"  *Russo*, 2012 WL 694842, at *19 (quoting *Sterling Drug, Inc. v. Bayer AG*, 792 F. Supp. 1357, 1365-66 (S.D.N.Y. 1992)).  Whether a contract is ambiguous is a question of law, and therefore appropriate for summary judgment.  *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F. 2d 260, 263 (2d Cir. 1987).

The existence of the Loan Agreements, as well as plaintiff's performance thereunder, are uncontroverted.  The Loan Agreements are unambiguous on their face:  Under the Wholesale Loan Agreement, Big Apple "promise(s) to pay to the order of VW Credit, Inc. . . . the sum of Three Million Three Hundred Forty-Seven Thousand Five Hundred and 00/100 Dollars . . . together with interest thereon."  Under the Capital Loan Agreement, Big Apple "promises to pay to the order of VW Credit, Inc . . . the principal sum of Two Hundred Fifty Thousand and 00/100 Dollars . . . in equal monthly installments . . . until the required number of monthly installments has been paid in full, together with interest thereon."  The Loan Agreements are signed by John L. Koeppel, in his capacity as Operating Manager, on behalf of Big Apple.  VCI undisputedly performed all obligations required of it under the Loan Agreements.  Affidavit of John Miele ("Miele Aff.") ¶ 32.

Nor is there any genuine dispute as to Big Apple's breach of the Loan Agreements.  John Miele, the Eastern Region General Manager of VCI, submitted an affidavit attesting to Big Apple's breach of the Loan Agreements:  Big Apple sold numerous vehicles, but has yet to remit any payment to VCI, placing it in breach of the Wholesale Loan Agreement, Miele Aff. ¶ 21,

and, because the two Loan Agreements are cross-defaulted, default on the Wholesale Loan Agreement places Big Apple in breach of the Capital Loan Agreement as well, *id*. ¶¶ 17, 22.

Finally, it is uncontroverted, and there is no genuine dispute, that VCI has suffered damages in the form of unpaid payments due and owing to it under the Loan Agreements. Miele Aff. ¶ 29.

With VCI having demonstrated that there is no genuine dispute as to Big Apple's breach of the Loan Agreements, in order for it to establish the liability to it of defendants Koeppel, Samborski, and Salim, it must establish that these defendants agreed, under the Guaranty Agreements, to guarantee such obligations of Big Apple's. Under New York law, "[a] guaranty must be construed in the strictest manner." *Davimos v. Halle*, 35 A.D.3d 270, 272 (N.Y. App. Div. 2006). "On a motion for summary judgment to enforce an unconditional guaranty, the creditor must prove the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty." *Id*.

VCI has proven these three elements. As noted, it has proven the underlying debt. Equally evident is defendants' failure to perform under the guaranty, as it is established that VCI has not been repaid the amounts due and owing it under the Loan Agreements, by either Big Apple or by any of the alleged guarantors. Finally, even construing the Guaranty Agreements in the strictest manner, there is no basis to dispute that these Agreements render defendants Koeppel, Samborski, and Salim guarantors of Big Apple's debts. Each defendant signed his respective Guaranty Agreement as the "guarantor," thereby "unconditionally guarantee[ing] to [VCI] the full and prompt payment when due of all indebtedness . . . of [Big Apple] due and to become due [to VCI] and the full, prompt and faithful discharge of all present and future obligations owed to or assigned to [VCI]." The Guaranty Agreements cover "any and all

indebtedness, liability and obligations of every kind, nature and description, owed to [VCI] by [Big Apple] . . . including all indebtedness evidenced by any promissory note(s)." The Guaranty Agreements further state that each guarantor shall be "jointly and severally" liable for the above-described indebtedness. There is no room to construe the Guaranty Agreements as anything other than an absolute commitment by defendants Koeppel, Samborski, and Salim to be held jointly and severally liable for Big Apple's debts to VCI.

Thus, VCI has established its prima facie right to summary judgment as to liability on its breach of contract claims against defendants in their individual capacities as guarantors of Big Apple. Defendants Samborski and Salim have not opposed or otherwise responded to VCI's motion for summary judgment. By definition, they have failed to "com[e] forward with 'specific facts showing that there is a genuine issue for trial.'" *Phillips*, 782 F.Supp. at 858 (quoting Fed. R. Civ. P. 56(e)). Although defendant Koeppel purported to file an opposition to VCI's motion for summary judgment, *see* Dkt. 61, none of the documents filed in support thereof, including his Rule 56.1 Statement, dispute VCI's assertions as to the existence of the Loan Agreements and the Guaranty Agreements, VCI's performance thereunder, or Big Apple's breach thereof. Rather, Koeppel argues that he cannot be held liable due to the actions of his co-defendants, which are irrelevant to VCI's claims for breach of contract. Summary judgment in favor of VCI on liability as to its claim for breach of claim against defendants Koeppel, Samborski, and Salim is, therefore, merited.

      **B.**    **Koeppel's Cross-Motion for Summary Judgment as to Samborski and Salim**

Koeppel was the sole defendant to respond, in any fashion, to VCI's motion for summary judgment. As part of his response, Koeppel filed a cross-motion for summary judgment against co-defendants Samborski and Salim, arguing that their actions ousting him from Big Apple made

it impossible for him to perform under the Guaranty Agreement. Koeppel asks that, should the Court grant VCI's motion for summary judgment, as it has, it also grant his motion for summary judgment against his co-defendants under the common law doctrine of indemnification.

Under New York law, "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Vemics, Inc. v. Meade*, No. 06-cv-8716, 2011 WL 2693275, at *4 (S.D.N.Y. June 30, 2011) (internal quotation marks and citation omitted). Koeppel appears to argue that, as a result of Samborski and Salim's alleged ouster of Koeppel from the business affairs of Big Apple, his means to perform under the Loan Agreements (*i.e.*, his ability to ensure that Big Apple promptly paid its debts to VCI) were destroyed, rendering his performance impossible. However—even assuming *arguendo* that it were established that Koeppel had been ousted from and rendered completely unable to intervene in the business of running Big Apple—Koeppel ignores the *personal* liability he undertook when he signed the Guaranty Agreement. The Guaranty Agreement does not bind Koeppel to ensure that Big Apple meets is financial obligations to VCI; rather, it binds Koeppel *himself* with respect to those obligations. As a guarantor, Koeppel "unconditionally guarantee[d]" to pay VCI for any and all of Big Apple's debts; his promise to pay was "absolute and unconditional."

Thus, even if there were no genuine dispute as to Koeppel's ouster from Big Apple, that would not vitiate his obligations under the Guaranty Agreement. Koeppel remains, along with his co-defendants Samborski and Salim, who also signed Guaranty Agreements, jointly and severally personally liable for Big Apple's debts to VCI. Koeppel's cross-motion for summary judgment is, therefore, denied.

## CONCLUSION

For the foregoing reasons, VCI's motion for summary judgment on liability as to its breach of contract claim (Count One) against defendants Koeppel, Samborski, and Salim is GRANTED. Defendant Koeppel's motion for summary judgment as to his first cross-claim against co-defendants Samborski and Salim is DENIED.

The Clerk of Court is directed to terminate the motions pending at docket entries number 43 and 59.

The Court hopes to move this case toward a speedy resolution as to the claims between VCI and the three individual defendants. To that end, a pretrial conference in this matter is scheduled for April 2, 2012, at 9:30 a.m., at the U.S. Courthouse, 500 Pearl Street, New York, New York 10007.

Further, defendants Samborski and Salim, as noted above, failed to oppose or otherwise respond to either summary judgment motion against them. No later than March 23, 2012, defendants Samborski and Salim shall show good cause, in writing, for their failure to actively defend this litigation. Failure to show good cause may result in an entry of default judgment against them.

SO ORDERED.

                                                              *Paul A. Engelmayer*
                                                              Paul A. Engelmayer
                                                              United States District Judge

Dated: March 14, 2012
       New York, New York