UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
VW CREDIT, INC.,                                                        :
                                                                        :         11 Civ. 1950 (PAE)
                                   Plaintiff,                           :
                                                                        :         OPINION & ORDER
                    -v-                                                 :
                                                                        :
BIG APPLE VOLKSWAGEN, LLC, JOHN KOEPPEL,                                :
GZREGORZ SAMBORSKI, and JULIAN SALIM,                                   :
                                                                        :
                                   Defendants.                          :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On March 15, 2012, this Court granted summary judgment as to liability in favor of plaintiff VW Credit, Inc. ("VCI"), on its contract claim against defendants John Koeppel, Gzregorz Samborski, and Julian Salim (collectively, "defendants"). *See* Dkt. 65. VCI now moves for summary judgment as to damages on that claim. The Court grants VCI's motion in its entirety.

**I.     Background and Undisputed Facts**[1]

Defendant Big Apple Volkswagen, LLC ("Big Apple"), not a party to this motion, is a car dealership in the Bronx, New York. VCI, a Delaware corporation authorized to do business in the state of New York, loaned Big Apple money for its inventory of motor vehicles and provided a working capital line of credit, which Big Apple promised to repay. VCI's loan to Big Apple was embodied in two promissory notes.

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' pleadings and their submissions in support of and in opposition to the instant motion, as well as in support of and in opposition to VCI's earlier motion for summary judgment on liability (Dkt. 43). Except where specifically referenced, no further citation to these sources will be made.

On June 12, 2006, Big Apple executed a promissory note, in the amount of $3,347,500, and a master security agreement (collectively, "Wholesale Loan Agreement"). Under the terms of the Wholesale Loan Agreement, Big Apple agreed, *inter alia,* to remit to VCI the portion of each vehicle sale or lease which represented the amount of money that VCI had loaned Big Apple under the loan. Big Apple also agreed to repay VCI $3,347,500, or such lesser sum as might be outstanding under the note, on demand, with interest.

On March 19, 2007, Big Apple executed another promissory note, in the amount of $250,000, and a master security agreement (collectively, "Capital Loan Agreement"). Under the terms of the Capital Loan Agreement, Big Apple agreed to repay the sum of $250,000, plus interest, at a schedule specified therein. Under both the Wholesale Loan Agreement and the Capital Loan Agreement (collectively, "Loan Agreements"), Big Apple granted to VCI a security interest in Big Apple's inventory of vehicles, chattels, and proceeds (collectively, "Collateral"). The Wholesale Loan Agreement and the Capital Loan Agreement are cross-defaulted, meaning that a default under one agreement constitutes a default under the other.

On June 12, 2006, defendant Koeppel signed a continuing guaranty. Under it, Koeppel guaranteed all of Big Apple's obligations to VCI. The guarantee makes Koeppel a primary guarantor under both Loan Agreements. Defendant Samborski signed a similar document on October 19, 2008, as did defendant Salim on October 29, 2008. As a result of these guarantees (collectively, the "Guaranty Agreements"), Samborski and Salim are also primary guarantors under the Wholesale Loan Agreement and the Capital Loan Agreement.

Big Apple sold 78 vehicles from its inventory. However, it did not remit payment to VCI, as required under the Wholesale Loan Agreement, in the amount of $1,237,615.86. In response to Big Apple's failure to pay VCI for this sum, VCI accelerated payment of all amounts

due under the Loan Agreements. By letter dated March 17, 2011, VCI notified guarantor defendants Koeppel, Samborski, and Salim of this acceleration. As of that date, the accelerated amount immediately due and payable to VCI from Big Apple was $3,888,059.84 under the Wholesale Loan Agreement and $54,263.45 under the Capital Loan Agreement.

On March 21, 2011, VCI filed its complaint in this action. It brought claims for breach of contract and breach of guarantees, as well as a claim for replevin of the Collateral. On April 1, 2011, the Court stayed the case for 90 days to monitor defendant Big Apple's bankruptcy proceeding. On July 1, 2011, defendants Samborski and Salim filed an answer; on July 8, 2011, defendant Koeppel filed an answer and cross-claims against Samborski and Salim. On July 11, 2011, Samborski and Salim answered the cross-claims. This case remains stayed against defendant Big Apple, which is the subject of an ongoing bankruptcy proceeding.

On March 15, 2012, this Court granted summary judgment in VCI's favor as to liability on its breach of contract claim against defendants Koeppel, Samborski, and Salim. On May 16, 2012, VCI filed its motion for summary judgment as to damages on its breach of contract claim against these three defendants. On June 18, 2012, defendants opposed the motion. On June 25, 2012, VCI filed its reply.

## II.     Legal Standard

A party moving for summary judgment has the burden of establishing that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) & (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002). Because summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, the moving party bears the burden of demonstrating the absence of a

material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the non-moving party.  *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment can defeat the motion for summary judgment "only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial."  *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23; Fed. R. Civ. P. 56(c)) (additional citations omitted).  Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading."  *Anderson*, 477 U.S. at 256.  Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  *Id*. at 247 (emphasis in original).  Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor.  *Id*. at 248.

## III.  Discussion

VCI seeks a total, under the Loan Agreements, of $1,146,758.11 from defendants.  Pursuant to the Wholesale Loan Agreement, defendants agreed to pay VCI the amounts due thereunder, as well as interest, as set by VCI.  Affidavit of Crystal Jeffrey-Alexander in Support of VCI's Motion for Summary Judgment (Dkt. 72) ("Alexander Aff.") ¶ 2 & Ex. A.  Defendants also agreed to pay to VCI "any collection or the cost of enforcing the terms of [the Wholesale Loan Agreement], including reasonable attorneys' fees and all costs of assembling, pick up and transporting any Collateral, and any monies advanced on behalf of [defendants] . . . to keep or protect the Collateral."  *Id*. ¶ 3 & Ex. A.  Pursuant to the Capital Loan Agreement, defendants

agreed to pay VCI the amounts due thereunder, as well as interest, as set by VCI. *Id*. ¶ 4 & Ex. B.

In support of its motion for summary judgment, VCI has submitted records, bates stamped VCI 2 through VCI 234, detailing the principal due and interest accrued on the Loan Agreements. *Id*. Ex. C. As of April 23, 2012, the principal amount owed to VCI by defendants under the Wholesale Loan Agreement is $514,835.20, after deductions for credits and cash collateral carve-outs paid to Big Apple's bankruptcy trustee. *Id*. ¶ 6 & Ex. C at 1. Also as of April 23, 2012, the interest amount owed to VCI by defendants is $59,476.29. *Id*. ¶ 8 & Ex. C at 1. As to the Capital Loan Agreement, as of April 23, 2012, the principal amount owed to VCI by defendants is $54,166.98 and the amount of interest accrued is $2,245.24. *Id*. ¶¶ 9–10 & Ex. E.

VCI has also submitted records, bates stamped VCI 235 through VCI 443, consisting of attorney billing records and client invoices from the firms McDowell, Rice, Smith & Buchanan and Deily, Mooney & Glastetter, LLP, detailing attorneys' fees accrued by VCI in litigation this matter. *Id*. Exs. F–G. As of March 27, 2012, VCI's attorneys' fees and expenses totaled $349,204.65. *Id*. ¶ 11 & Exs. F–G.

Finally, VCI has submitted records, bates stamped VCI 444 through VCI 464, consisting of invoices from (1) private security companies it contracted to protect its Collateral and to prevent Big Apple from disposing of the Collateral, and (2) a management company VCI funded to protect the Collateral and the value of the Big Apple dealership, and to maintain priority of its security interests in the Collateral. *Id*. ¶¶ 12–15 & Exs. H–I. The invoices reflect $50,578.10 in private security expenses and $116,242.65 in management expenses. *Id*. Exs. H–I.

Because this Court has already found, in its March 15, 2012 decision, that defendants are liable to VCI for all breach of contract damages owed under the Loan Agreements, the inquiry at

hand is whether there is any genuine dispute that the amounts recited above are properly classifiable as breach of contract damages sustained by VCI.  Defendants Samborski and Salim filed a Local Rule 56.1 counterstatement, *see* Dkt. 81, and defendant Koeppel filed a separate one, *see* Dkt. 83.  Neither of these counterstatements raises any genuine dispute that defendants do not owe VCI the amounts claimed.

Koeppel's counterstatement contains literally no citations to the record, despite the requirement of Local Rule 56.1(d) that "[e]ach statement by the movant or opponent [in a summary judgment motion], including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Where an assertion made in a statement on a motion for summary judgment contains "no citations or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001) (collecting cases).  Koeppel's counterstatement does no more than deny, admit, or deny sufficient knowledge to respond as to each of the enumerated statements in VCI's Rule 56.1 statement.

In his memorandum of law, Koeppel argues generally that VCI failed to mitigate its damages, and that the amount reflect in the invoices for attorneys' fees is excessive.  Koeppel similarly states in his affidavit that he "should not be held response for $246,721.12 of legal fees."  Dkt. 84 at 2.  But Koeppel does nothing beyond making conclusory and general assertions.  Notably, he does not question the propriety of any individual billing entry; nor does he muster any factual support for his broad assertion that the bills by VCI's outside counsel were excessive.  Such advocacy alone is insufficient, as "ultimate or conclusory facts and conclusions

6

of law . . . cannot be utilized on a summary judgment motion." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996).

The Court has, in any event, independently reviewed the documentation that VCI has submitted in support of its requested attorney fees. It includes 116 pages of billing records submitted to VCI by its outside counsel, the law firm of McDowell, Rice, Smith & Buchanan, covering the period between March 15, 2011 and March 19, 2012. *See* Alexander Aff. Exs. F1 & F2. It also includes 93 pages of billing records submitted to VCI from its local counsel, the law firm of Deily, Mooney & Glastetter, covering the period between March 17, 2011 and February 29, 2012. *See id.* Exs. G1 & G2. These records reflect extensive work done in connection with Big Apple's bankruptcy proceeding and in related litigations. Consistent with this, the docket sheet of Big Apple's bankruptcy proceeding, which VCI's counsel has furnished the Court, reflects that it has been contentious. *See* Dkt. 91, Ex. 1 (Big Apple bankruptcy docket sheet). The time sheets are appropriately detailed and do not appear to reflect duplicative or excessively staffed work. They reflect substantial time devoted to projects and tasks including, but not limited to: preparation of a motion in bankruptcy court to prohibit the debtor's use of cash collateral, *see, e.g.*, Alexander Aff. Exs. F1 at 12, G1 at 7, G2 at 10; preparation for and participation in a hearing in this court seeking a temporary restraining order and replevin, *see, e.g.*, *id.* Exs. F1 at 17, G1 at 12; participation for a hearing and oral argument regarding the appointment of a bankruptcy trustee, *see, e.g.*, *id.* Exs. F1 at 36, 44, G2 at 19; meetings with the trustee, *see, e.g.*, *id.* Exs. F1 at 39, G2 at 3; work on an adverse action against the Salims for fraudulent transfers, *see, e.g.*, *id.* Ex. F1 at 58; preparation of the summary judgment motion on liability in this case, *see. e.g.*, *id.* Exs. F2 at 15, G1 at 22; participation in a hearing on defense counsel's motion to withdraw as counsel in this case, *see, e.g.*, *id.* Ex. G1 at 27; filing an

objection to and participating in a hearing regarding debtor's counsel's fee application, *see, e.g.*, *id.* Ex. G2 at 48–50; participation in an extended sales process directed by the trustee; and the manifold other activities that facilitate such work, such as legal research, correspondence, and meetings with counsel and parties, *see, e.g.*, *id.* Exs. F & G, *passim*. In addition to attorneys' fees, VCI's totals reflect the substantial costs incurred by counsel in traveling to New York for court appointments, *see, e.g.*, *id.* Exs. G1 at 13–14, G2 at 19, and in paying court fees and other litigation expenses, *see, e.g.*, *id.* Ex. G2 at 17. Finally, the invoices from the private security company and the management company hired to protect the Collateral reflect the reasonable costs of doing so. *See id.* Exs. H–I.

In sum, VCI's documentation in support of its claim for attorneys' fees and related costs is facially adequate and reasonable. In the absence of any objection to any specific portion of the legal bills for which VCI seeks reimbursement, the Court finds this documentation sufficient to justify including such fees and costs within VCI's damages. Koeppel's general protestations of excessiveness are insufficient to raise a genuine issue of material fact. *See Bank of America, N.A. v. Klein*, No. 3:10-cv-987 (JBA)(WIG), 2012 WL 5286962, at *5 (D. Conn. Oct. 23, 2012) (Report & Rec.) (finding defendant's conclusory statement that fees are unreasonable insufficient to defeat motion for summary judgment); *cf. Barbour v. City of White Plains*, No. 11 Civ. 2229, 2012 WL 5503601, at *3 (2d Cir. Nov. 12, 2012) (slip op.) (defendants' non-specific objection to fee award insufficient to preserve argument for appeal). Summary judgment as to damages in VCI's favor is, therefore, appropriate against Koeppel, in the amount of $1,146,758.11.

The submissions by Samborski and Salim are similarly inadequate. The only citations to the record in the counterstatement submitted by defendants Samborski and Salim are to two identical affidavits, likewise submitted by these defendants. It is true that, pursuant to Rule 56,

8

affidavits or declarations are materials in the record which may be cited to in support of a statement made on summary judgment. Fed. R. Civ. P. 56(c)(1)(A). However, defendants' affidavits themselves contain nothing more than conclusory statements, including that: "[a]t the time VCI took possession of the dealership, they had held over $300,000.00 in credits owed to Big Apple Volkswag[e]n for sales recently finalized"; "[a]t the time VCI seized control of the dealership Big Apple Volkswag[e]n was owed in excess of $150,000.00"; the amount of money that VCI claims it spent to keep the dealership open is "outrageous"; and the amount of attorneys' fees claimed by VCI "is not reasonable or fair." Affidavits of Gzregorz Samborski and Julian Salim in Opposition to VCI's Motion for Summary Judgment ¶¶ 8, 13, 18, 22 (Dkts. 88, 89). None of these statements are supported by citation to the record. They therefore do not assist these defendants on summary judgment. *See BellSouth Telecomms.*, 77 F.3d at 615 ("[A]n adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion [for summary judgment] must set forth concrete particulars. It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts." (citations omitted)). Because "conclusory statements are insufficient to raise a triable issue of material fact," they are "properly disregarded" on a motion for summary judgment. *Id*. Because defendants Samborski and Salim, like defendant Koeppel, fail to raise any genuine issues of material fact, summary judgment as to damages in VCI's favor is appropriate against them, in the amount of $1,146,758.11.

## CONCLUSION

For the foregoing reasons, VCI's motion for summary judgment on damages as to defendants Koeppel, Samborski, and Salim is granted, and the defendants are jointly and severally liable to VCI in the amount of $1,146,758.11. The Clerk of Court is respectfully instructed to terminate the motion pending at docket entry number 71.

No later than December 13, 2012, the parties are directed to submit a joint letter (1) identifying the remaining claims in this case, and (2) proposing a schedule going forward. To the extent the parties cannot agree, the letter should identify areas of disagreement and each parties' proposal. Glenn Backer, Esq., counsel for defendant John Koeppel, is directed to file this submission with the Court.

Sixty days from the date of this opinion, and every 60 days thereafter, VCI is instructed to apprise the Court of the status of Big Apple's bankruptcy proceeding.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 29, 2012
       New York, New York